UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

TERRE JOHNSON,

    Plaintiff,

v.                                                 Case No. 6:18-cv-2011-Orl-37DCI

JOHN "BUDDY" DYER; JOHN MINA;
and OFFICER JAMES M. WILSON,

    Defendants.

___

**ORDER**

In this action, Defendants John "Buddy" Dyer, mayor for the City of Orlando, Florida ("**Dyer**") and John Mina, police chief for the Orlando Police Department ("**Mina**"), move for dismissal of several of Plaintiff Terre Johnson's ("**Johnson**") claims. (Doc. 26 ("**Motion**").) For the reasons set forth below, the Motion is due to be granted in part and denied in part.

## I.    BACKGROUND[1]

Johnson describes himself as a 47-year-old African-American male who is homeless, gay, and HIV positive. (Doc. 24, ¶ 2 ("**Complaint**").) Johnson alleges that on

___

[1] The facts from Johnson's Amended Complaint (Doc. 24) are taken as true and construed in the light most favorable to Johnson. *See Hill v. White*, 321 F.3d 1334, 1335 (11th Cir. 2003).

-1-

or about August 26, 2015, he was sitting on a street curb with friends in Orlando, Florida, when he was confronted by Officer James M. Wilson of the Orlando Police Department ("**Officer Wilson**"). (*Id.* ¶ 17.) Officer Wilson accused Johnson of "having 'his feet in the street'" and then proceeded to "jump around making monkey movements while he taunted and mocked Johnson's manner of speech and dialect" and falsely alleged Johnson violated the law "in order to taunt and berat[e] [Johnson] for his inability to pay any civil fine for those violations." (*Id.* ¶¶ 17, 23, 29.) When Johnson attempted to walk away, "Officer Wilson, without cause, tackled [Johnson] from behind to the ground and began brutally smashing [Johnson's] face into the ground and beating him while [Johnson] tried to defend himself." (*Id.* ¶¶ 32, 33.) Johnson was arrested "[b]ased on false allegations" for battery and aggravated battery of Officer Wilson and resisting Officer Wilson without violence. (*Id.* ¶ 34.) Johnson later went to trial, where a jury acquitted him of all charges. (*See* Doc. 24, ¶ 41; Doc. 1-1, p. 15.)

Johnson sued Officer Wilson as well as Dyer in his official capacity as Mayor of Orlando, and Mina in his official capacity as Chief of the Orlando Police Department, alleging civil rights violations under 42 U.S.C. § 1983 and state tort claims. (Docs. 1, 24.) For the § 1983 claims, Johnson alleges that Dyer and Mina have a "policy of allowing police officers to harass homeless people" and "fostered, condoned, and encouraged . . . officers to use excessive force, wrongfully arrest, or otherwise violate citizens' rights . . . ." (Doc. 24, ¶¶ 38, 39, 46.) He also alleges Dyer and/or Mina knew or should have known that prior similar incidents had occurred and were deliberately indifferent to "these prior

constitutional deprivations." (*Id.* ¶¶ 45, 48.)

In his Complaint, Johnson has asserted six counts against the Defendants. (*See id.*) Specifically, he asserts three federal claims: (1) a 42 U.S.C. § 1983 excessive force claim against Officer Wilson in his individual capacity ("**Count I**"); (2) a 42 U.S.C. § 1983 excessive force claim against Dyer and Mina in their official capacities ("**Count II**"); and (3) a 42 U.S.C. § 1983 false arrest and imprisonment claim against Officer Wilson in his individual capacity ("**Count III**"). (*Id.* ¶¶ 55–89). Additionally, Johnson brings three state-law claims against all Defendants for assault ("**Count IV**"), battery ("**Count V**"), and false imprisonment ("**Count VI**"). (*Id.* ¶¶ 90–112.) Dyer and Mina have moved to dismiss all counts against them, arguing they are improper parties and Johnson has failed to state a claim under Federal Rule of Civil Procedure 12(b)(6). (Doc. 26.) Specifically, Dyer and Mina argue Johnson has failed to state a § 1983 claim for municipal liability under *Monell*, 436 U.S. 658 (*id.* at pp. 3–8) and the state law claims should be dismissed pursuant to Florida Statute § 768.28 because Johnson alleged Officer Wilson was acting in bad faith (*id.* at pp. 8–9). After prompting from the Court (Doc. 27), Johnson responded (Doc. 28 ("**Response**")), so the matter is now ripe for review.

## II. LEGAL STANDARDS

### A. General Pleading Standards

Generally, federal civil complaints must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). When a complaint fails "to state a claim to relief that is plausible on its face" and only offers

"labels and conclusions," the defendant may seek dismissal of the complaint under Rule 12(b)(6). *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009). When considering a Rule 12(b)(6) motion, courts must accept all well-pleaded factual allegations—but not legal conclusions—"as true and construe[ ] them in the light most favorable to the plaintiff." *Speaker v. U.S. Dep't of Health & Human Servs. Ctrs. for Disease Control*, 623 F.3d 1371, 1379 (11th Cir. 2010) (citation omitted). After disregarding any legal conclusions asserted, the court must determine whether the complaint includes "factual content" sufficient to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678–79 (citing *Twombly*, 550 U.S. at 556).

### B. Municipal Liability Under 42 U.S.C. § 1983

Section 1983 provides aggrieved persons with a procedural mechanism to seek redress for constitutional violations that are committed while a defendant is acting under color of state law. 42 U.S.C. § 1983. However,

> [A] local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents. Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983.

*Monell v. N.Y.C. Dep't of Social Servs.*, 436 U.S. 658, 694 (1978). Thus, a plaintiff seeking to hold a municipality responsible must allege: (1) his constitutional rights were violated; (2) the municipality had a custom or policy that constituted deliberate indifference to that constitutional right; and (3) the policy or custom caused the violation.

*McDowell v. Brown*, 392 F.3d 1283, 1289 (11th Cir. 2004).

### C. Florida Sovereign Immunity

A Florida municipality isn't liable in tort for the "acts or omissions of an officer, employee, or agent committed while acting outside the . . . scope of . . . his employment or committed in bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety, or property." Fla. Stat. § 768.28(9)(a). "In any given situation either the [city] can be held liable under Florida law, or the employee, but not both." *McGhee v. Volusia Cty.*, 679 So. 2d 729, 733 (Fla. 1996). However, a plaintiff may plead both theories—(1) the defendant acted in good faith and (2) the defendant acted in bad faith—in the alternative. *See, e.g., Duquesne v. City of Miami Beach*, No. 12-20575-CIV-HUCK/BANDSTRA, 2012 WL 3061603, at *12–13 (S.D. Fla. July 26, 2012).

### III. ANALYSIS

### A. Official Capacity

As an initial matter, Johnson seeks to sue both Dyer, as mayor of the City of Orlando ("**City**"), and Mina, as the police chief of the Orlando Police Department, only in their official capacities. (*See* Doc. 24.) This is redundant. "Because suits against a municipal officer sued in his official capacity and direct suits against municipalities are functionally equivalent, there no longer exists a need to bring official-capacity actions against local government officials, because local government units can be sued directly . . . ." *Busby v. City of Orlando*, 931 F.2d 764, 776 (11th Cir. 1991) (citation omitted). Further, "[u]nder Florida law, police departments are not legal entities amenable to suit." *Williams v. Miami-Dade Police Dep't*, 297 F. App'x 941, 945 (11th Cir. 2008). Thus, as Johnson

concedes, the claims against Dyer and Mina are actually against the City—so, functionally, Johnson has named the City as a party twice. (Doc. 28, p. 6). Such redundant defendants are "duplicative, unnecessary, and confusing to the finder of fact." *Adams v. City of Orlando Code Enf't Bd.*, No. 6:07-cv-576-Orl-19JGG, 2007 WL 1229103, at *3 (M.D. Fla. Apr. 26, 2007). The Clerk therefore will be directed to terminate Dyer and Mina as parties to this suit and recaption the suit to name the City of Orlando as a defendant along with Officer Wilson. Functionally, however, this has no impact on the Complaint.

### B. Municipal Liability Under 42 U.S.C. § 1983

Dyer and Mina argue Count II, Plaintiff's § 1983 claim against them, should be dismissed for failure to state a claim for municipal liability pursuant to *Monell*, 436 U.S. 658. While from the Complaint it is difficult to ascertain under what theory or theories Johnson is asserting his § 1983 claim, his Response confirms his claim is based on alleged municipal policies or customs and failure to train. (Doc. 28, p. 4).

A custom or policy can be established by showing: (1) an express policy exists; (2) the final policymakers for the municipality "have acquiesced in a longstanding practice that constitutes the entity's standard operating procedure"; or (3) someone with final policymaking authority adopted or ratified the unconstitutional act or decision of a subordinate. *Hoefling v. City of Miami*, 811 F.3d 1271, 1279 (11th Cir. 2016). In limited circumstances, a municipality's failure to train its employees may amount to an official government policy for purposes of § 1983. *Connick v. Thompson*, 563 U.S. 51, 61 (2011); *see*

*also City of Canton v. Harris*, 489 U.S. 378, 388 (1989). The failure to train employees "must amount to deliberate indifference to the rights of persons with whom the untrained employees come into contact." *Connick,* 563 U.S. at 61 (internal quotations and alternations omitted). Deliberate indifference is a stringent standard. *Id.* A municipality may be deemed deliberately indifferent if it maintains a "policy of inaction in light of actual or constructive notice that a particular omission in their training program will cause constitutional violations." *Id.* (citations and quotation marks omitted). Under a failure-to-train theory, a plaintiff must ordinarily demonstrate a "pattern of similar constitutional violations by untrained employees." *See id.* at 62; *see also Weiland v. Palm Beach Cty. Sheriff's Office*, 792 F.3d 1313, 1328–29 (11th Cir. 2015) (affirming dismissal of the plaintiff's failure-to-train claim because he failed to allege a pattern of similar constitutional violations by untrained employees); *see also Espinoza v. Harrelson*, No. 6:15-cv-1923-Orl-37GJK, 2016 WL 3926497, at *5 (M.D. Fla. Jul. 21, 2016) (dismissing plaintiff's failure-to-train claim because plaintiff did not allege relevant specific instances to support a policy under *Monell*).[2]

Here, Johnson fails to make such a showing. Johnson alleges the City has a "policy of allowing police officers to harass homeless people" and that there was a policy or

---

[2] *Cf. Johnson v. City of Daytona Beach*, No. 6:16-cv-941-Orl-40TBS, 2017 WL 119744, (M.D. Fla. Jan. 12, 2017) (finding that the plaintiff had adequately pleaded a failure to train by alleging twenty-four prior incidents of defendants' misconduct related to the use of excessive force); *Rivas v. Figueroa*, No. 11-23195-Civ., 2012 WL 1378161 (S.D. Fla. Apr. 20, 2012) (denying the defendant's motion to dismiss because the plaintiff had sufficiently pleaded a failure to train by alleging five instances where officers had unlawfully searched and seized personal property).

custom at the police department which "fostered, condoned, and encouraged its officers to use excessive force, wrongfully arrest, or otherwise violate citizens' rights." (Doc. 24, ¶¶ 38, 39, 46.) But beyond these conclusory allegations, he offers no facts to support a finding of a policy or practice, as required by § 1983. Apart from the instant case, Johnson provides no other instances of excessive force being used by City of Orlando officers nor does he point to written policies or even statements made by either Mina or Dyer indicating that such a policy exists. (*See* Doc. 24.) While Johnson argues that the use of force policy of the police is so confusing and ambiguous as to permit the use of force in situations which violates the Constitution, again this conclusory statement is unsupported by facts. (*See id.*, ¶ 68.) Johnson does not cite to the use of force policy and explain, specifically, why this is the case, nor does he compare the use of force policy to other policies that have been found to violate the constitution, nor has he been able to point to other instances where this same use of force policy has permitted constitutional violations. Johnson also fails to allege this case involves an issue so obvious Dyer and Mina were unreasonably indifferent to a need for training. *See City of Canton*, 489 U.S. at 390; *Weiland*, 792 F.3d at 1329.

Johnson's response, which focuses on whether his constitutional rights were violated instead of addressing the *Monell* deficiencies, is unavailing. (*See* Doc. 29.) Defendants' Motion to Dismiss Count II is granted. Since Johnson could still plead adequate facts to establish a valid § 1983 claim against the City, however, Count II will be dismissed without prejudice and Johnson is granted leave to replead this claim.

## C. State Law Claims & Florida Sovereign Immunity

Dyer and Mina argue the state law claims against them [the City] should be dismissed because Johnson has alleged facts showing Officer Wilson acted in bad faith, therefore immunizing the municipality from liability under section 768.28(9)(a), Florida Statutes.[3] (Doc. 26.) Despite Johnson's assertions otherwise, the sufficiency of allegations of bad faith may be addressed at the motion-to-dismiss stage. *See, e.g.*, *Eiras v. Florida*, 239 F. Supp. 3d 1331, 1345 (M.D. Fla. 2017) (granting dismissal of a false arrest claim because the allegations did not plausibly suggest bad faith); *cf. Duquesne*, 2012 WL 3061603 (declining to dismiss state law claims against individual officers or the city because the plaintiff had not based the claims solely on allegations of bad faith). "Courts construing the bad faith prong of section 768.28 use the actual malice standard, which means the conduct must be committed with ill will, hatred, spite, or an evil intent." *Eiras*, 239 F. Supp.3d at 1343 (internal citations and quotations omitted). Allegations of such behavior "may not be stated as mere legal conclusions, but instead must be supported by facts." *Duquesne*, 2012 WL 3061603, at *12.

Johnson explicitly alleges bad faith in only one count directed against Officer Wilson individually, and Johnson adamantly denies alleging the officer acted in bad faith in his counts against the City. (Doc. 28, p. 7; *cf.* Doc. 24.) Johnson is permitted to plead

---

[3] Dyer and Mina also argue that there are no factual allegations that either of them directly engaged in tortious conduct or that they are directly vicariously liable. The Court will not address these arguments since the claims against Dyer and Mina are official capacity claims and because of the Court's decision to terminate Dyer and Mina as defendants.

alternatives. *See, e.g., Duquesne v. City of Miami Beach*, 2012 WL 3061603. But the Court looks beyond conclusory statements and analyzes the factual allegations of the Complaint for indications of bad faith. *Id.* at 12. Johnson makes some factual statements that could support a finding of malicious intent on the part of Officer Wilson, (*see, e.g.*, Doc. 24 ¶ 23 ("Officer Wilson then began to jump around making monkey movements while he taunted and mocked Johnson's manner of speech and dialect.")). However, many of the alleged actions that support the state law claims may not rise to the level of bad faith—for example, John alleges he was "tackled, injured, handcuffed, and detained," all of which are actions that a police officer could conceivably do while acting in good faith. *See, e.g., Duquesne*, 2012 WL 3061603, at *13 (explaining actions such as "punching, kicking, and arresting are frequently tools police officers may use in good faith. Accordingly, it would be improper to dismiss [the claims] against the City at this time.") Since Johnson has alleged sufficient facts to support finding Wilson was acting in good faith while effecting Johnson's arrest, the state court claims will survive this Motion to Dismiss.

## IV. CONCLUSION

Accordingly, it is **ORDERED AND ADJUDGED** as follows:

1. Defendants' Motion to Dismiss (Doc. 26) is **GRANTED IN PART** and **DENIED IN PART.**

    a. The Motion is granted as to Count II. Count II is **DISMISSED WITHOUT PREJUDICE** and with leave to amend.

  b. The Motion is denied as to Counts IV, V, and VI.

2. Plaintiff may file a second amended complaint that addresses the deficiencies identified in this Order by Tuesday, **December 10, 2019.**

3. The Clerk is **DIRECTED** to terminate Dyer and Mina as defendants and add the City of Orlando as a defendant.

**DONE AND ORDERED** in Chambers in Orlando, Florida, on November 26, 2019.



ROY B. DALTON JR.
United States District Judge

Copies to:
Counsel of Record